# BRYANT *vs.* YOUNG, HALL ET AL.

1. A conveyance executed by an insolvent to one of his creditors, absolute on its face, but accompanied by a contemporaneous parol agreement that it should operate only for the grantee's indemnity, is fraudulent and void as to the other creditors of the grantor, and will be set aside in equity.

2. If the land has been sold by the grantee to a *bona fide* purchaser for a valuable consideration, who is not made a party to the bill filed by the creditors of the grantor, the land itself cannot be subjected to the complainants' demand.

3. But the proceeds of the sale in the hands of the fraudulent grantee may be subjected, and so far as any portion of the same can be traced into other property purchased or exchanged by him, a court of equity will fasten a trust upon it in favor of the creditors.

4. If the creditor elects to follow the proceeds of the land in the hands of the fraudulent grantee, the purchaser from him is not a necessary party to the bill.
5. The fact that the fraudulent grantee was also a creditor of the grantor's, only proves that the transfer to him was upon a valuable consideration, but does not give him a superior equity to complainant's. Evidence of the fraudulent intent supersedes the whole inquiry into the consideration; for, no merit in any of the parties to a transaction can save it, if it carries intrinsically or extrinsically the evidence of fraud.

ERROR to the Chancery Court of Benton.

Heard before the Hon. D. G. LIGON.

This bill was filed by Rowland Bryant, the plaintiff in error, against William Young, Fleming Young and Thomas Hall. Its object is, a discovery of effects, and to subject to the satisfaction of complainant's judgment at law against William Young, certain real and personal property alleged to have been fraudulently conveyed by him to the other defendants, for the purpose of hindering, delaying and defrauding his creditors. The complainant dismissed his bill before the hearing, so far as it sought to condemn the personal property, and prosecuted it only as to the real estate.

The bill charges, "that said William Young furnished money and entered a tract of land, at the Cross Plains in Benton county, heretofore called the "Box place," and now called the "Price place;" that the entry was made in the name of said Fleming Young, and by him held for the use of said William; that, not long since, said William managed to sell said land to one Price, for about $800; that the notes taken for said purchase money were made payable to said Thomas Hall, under the pretence that said William was indebted to him; and that said Hall and Fleming have in their possession and control other property and effects, which of right belong to said William, and which they hold for him, and allow him to use whenever he sees proper to do so."

The defendants answer separately, denying all fraud and combination. They allege, that said William Young purchased, and entered in his own name, a tract of land known as the west half of the north half of the north west quarter of fractional section eight, in fractional township thirteen, range eight, east, containing $73\frac{1}{100}$ acres; that he

18

afterwards exchanged a part of this land, with one John W. Ledbetter, for the north east quarter of the north west quarter of fraction E, of the same section, and took from him his bond for title in his own name; that he afterwards sold said land, together with the residue of the tract first purchased by him, to said Thomas Hall, and transferred to him Ledbetter's title bond, and also gave his own title bond for the residue; that the consideration for said transfer, sale and bond, was, that said Hall had, before that time, become security for him, on several debts, which are particularly described in the answers; "it being considered that said land was worth about the amount of said claims, and the said Hall being willing to take the same, as his indemnity, and discharge said debts, which was agreed to by said William; the said Hall saying at the time, that all he wanted was to be secured, and that if he sold the land for a larger amount than sufficient to pay the same, he would account to said William for the surplus; that said land was afterwards sold by said Hall, together with another tract then owned by him, to one James Price, for the sum of $800, by and with the consent of said William, the land which said Hall got from said William being rated at $300."

They deny, that said William furnished the money and entered the tract of land at the Cross Plains, called "the Box place;" and allege, that said entry was made by Fleming Young in his own name, and with money furnished him by said Hall; that said land was afterwards transferred to said Hall, to secure the entrance money advanced by him, and was embraced in the tract sold to said Price as aforesaid; that the contract of sale with said Price was conducted by said William Young, subject to the subsequent ratification of the contract by said Hall, who was the owner, and who subsequently ratified said contract, and received the proceeds.

The testimony taken in the cause is very voluminous, but it is not thought necessary to state it at length, as the opinion of the court proceeds mainly on the admissions contained in the answers. There was proof that one Box had a pre-emption claim to the tract of land which Fleming Young afterwards entered, and that he made an agreement with said William Young to let him have one half of the land, if he

would advance the entrance money for the whole tract; but this agreement was never carried into effect, and the land was subsequently entered by Fleming Young, as already stated.

The Chancellor dismissed the bill, holding, that the proof was not sufficient to outweigh the positive denials in the answers, and show that the defendants had been guilty of any fraud, in fact, intention or law; and his decree is now assigned for error.

JOHN FOSTER, for plaintiff in error:

The answers admit, that the conveyance from William Young to Hall, though absolute on its face, was only intended as an indemnity or security for payments made, or liabilities incurred by him for Young, and contained a parol reservation for the benefit of the grantor. Such a conveyance, absolute on its face, but intended only as a security or mortgage, is fraudulent and void against creditors and purchasers. If there are incumbrances on property, parties must frame their contracts accordingly. Holcombe v. Ray, 1 Iredell, 342; Gregory v. Perkins, 4 Dev. 50; 8 New Hamp. 290.

The courts will not give the least countenance to the securing of debts by absolute conveyances, if there is a secret understanding that the debtor is to be benefited. Smith v. Lowder, 6 New Hamp. 69.

J. B. MARTIN, contra:

1. This is a creditor's bill in the nature of a garnishment, seeking a discovery of effects. The answers are directly responsive to the allegations of the bill, denying all fraud, or that they have any effects belonging to Wm. Young; and not being overturned by proof, the answers must prevail. Fenno, et al. v. Sayre & Converse, 3 Ala. 478; Hogan et al. v. Smith, et al., 16 Ala. 600; Ware v. Jordan, decided at January term, 1851, but not reported.

2. The admissions or declarations of William Young, after he had made the sale, cannot affect Thomas Hall, unless he was connected with it, which is not pretended. Collier v. Chapman, 2 Stewart, 163; Julian v. Reynolds, 8 Ala. 680; 8 Porter, 270; 3 Ala. 83.

3. Whatever may have been the intentions of said William

Young as to fraud, the other defendants, not being connected with them, are not to be affected by them. 7 Ala. 142; 10 ib. 355; 7 ib. 585.

As to secret trusts, see 12 Ala. 101; 11 ib. 690; 1 ib. 259.

4. The transaction between William Young and Hall is, at most, but a mortgage or deed of trust, executed by Young to Hall, with the usual power of sale, and the usual provision, that if, upon a sale, the property should bring more than enough to pay the debt, the balance should go to the mortgagor. It has been decided, that this provision does not vitiate the transaction, as it is only expressing what law and justice do, without any express stipulation.

5. But if this conveyance is to be regarded as an assignment, then Price was a necessary party to the bill, since the land has been sold to him; and as his interest appears upon the face of the bill, the demurrer for want of proper parties. should have been sustained, and the bill dismissed for that reason. 1 Dan. Chan. Prac. 619.

CHILTON, J.—This was a bill filed by Bryant, the plaintiff in error, a judgment creditor of the defendant, William Young, for the discovery of effects, and to subject certain personal and real estate specifically described, to the satisfaction of the plaintiff's judgment.

The plaintiff dismissed his bill as to the personal estate, and the Chancellor having decided against him as to the real estate, he seeks to reverse that decree in this court.

The land consists of two small tracts, one of which, called the Box place, being the east half of the south west quarter of section eight, in township thirteen and range ten, was sold by Fleming Young to Thomas Hall. As to this tract, the decree refusing relief is clearly correct. It was entered in the name of Fleming Young, with the money of Hall, to whom said Fleming afterwards transferred it in part to secure the repayment of the purchase money. The arrangement made between Wm. Young and Box, had no necessary connection with the entry of the land subsequently by Fleming; and the fact, that in the transfer of the land by Fleming to Hall, a debt of William for which Hall was bound as security, was provided for, is not sufficient to show that this land, or any in-

terest in it, belonged to William Hall. After a careful examination of the record, we are satisfied that it fully sustains the decree of the Chancellor, as to this portion of the land.

With respect, however, to the proceeds of the land transferred by William Young to Hall, we think the decree is erroneous.

It appears that William Young, being the owner of the north west quarter of the north west quarter of fraction E, section eight, township thirteen, range eight, and holding the bond of one Ledbetter for title to the north east quarter of the north west quarter of the same fraction, made an absolute transfer of Ledbetter's bond to Hall, and executed his own bond to make him title to the portion owned by him. These transfers are absolute, as indicated by the writing and assignment. But both William Young and Hall show very clearly in their answers, that, although the transfers were absolute upon their face, they were intended merely for the security of Hall; " to indemnify him against his liability for William on a note held by one Isbell, for $100, and a note due to one Dugger, for $52\frac{5}{100}$, and to secure the payment of a note due to said Hall of $81\frac{5}{100}$." It was consented and agreed between them at the time, that Hall should not speculate upon the property, but if Hall sold the land for more than would indemnify him, the overplus should be paid to said Young. There is, therefore, no doubt, if we look alone to the answers, that here was a parol trust in favor of Young, the vendor, and that the contract was designed to operate in the nature of a mortgage, as between the parties, but as to all the world beside, the sale should be absolute, as evinced by their writings. If such was not the intention, why, it may well be asked, did not the parties execute a mortgage or deed setting forth the trust? By this arrangement, Young, who is shown to be insolvent, is enabled to place his property as a kind of deposit in the hands of Hall, secured against his other creditors by an absolute sale, but, as between him and Hall, to operate merely for Hall's indemnity, after which Young is to make the most of it.

The law will not tolerate such a transaction; for if it did, an insolvent debtor could easily arrange with a favored creditor to become the absolute owner of his effects, thus securing

them, by the absolute nature of the transfer or conveyance, from liability to his other debts, while at the same time, he could avail himself of the effects as secured in trust: could speculate upon his equity of redemption, or pocket the residuum should a sale take place, or use the transfers as a cover for future advances. It requires neither argument nor illustration to show with what ease such transfers could be converted to the worst of purposes.

In Gregory v. Perkins, 4 Dev. 50, it was held, that "a deed absolute on its face, but executed on a parol agreement for redemption, is, in law, fraudulent and void against the creditors of the vendor."

So, also, in the late case of Holcombe v. Ray, 1 Ired. Rep. 340, it was held, that "a deed absolute on its face, but intended as a mortgage only, is fraudulent and void against creditors and purchasers, and against subsequent as well as prior creditors." And, in the case last cited, the court went so far as to hold, that the deed was not validated by the subsequent agreement between the grantor and grantee, that the latter should have all the interest of the grantor in the premises, and the actual payment by the grantee of the full value of the land to the grantor's creditors.

The courts uniformly refuse to lend countenance to this mode of securing debts by absolute conveyances or transfers, while there is an understanding between the parties reserving an interest to the grantor. Smith v. Lowder, 6 N. H. 69; 8 ib. 290.

There is no hardship in requiring those who seek to gain a preference over other creditors of an insolvent debtor, to make the written evidence of the contract substantially conform to the truth. The propriety of such a course is obvious to every ingenuous mind. By doing so, the other less fortunate creditors of the insolvent party will not be deluded by false appearances, the registration laws will not be defeated in securing the object which led to their enactment, and the unfortunate debtor himself will be cut off from temptations to fraud and circumvention in creating secret trusts for his benefit.

Another question, however, arises in this case which is not free from difficulty. This tract of land, with others, has

been sold to one Price, and the bill does not negative the idea of his being a *bona fide* innocent purchaser for a valuable consideration. Indeed, there is no averment impeaching the sale, or seeking to set it aside, and Price is not made a party. So that it is clear, however fraudulent and void the sale from Young to Hall may have been, the land under the present bill cannot be subjected. 1 Story's Eq. § 381. The question then comes up, can the proceeds be followed and subjected?

Hall, it will be remembered, is a creditor of Young, and this land was sold to him partly to secure the payment of his own demand, and partly to provide for the payment of demands for which he was bound for others. It appears that a portion of the proceeds of the sale to Price has been received in money, and applied to the payment of these debts. It is very clear, that the court will not interfere to set aside such payment, or charge Hall with the funds thus appropriated; while, on the other hand, it is equally clear, the exchange of the land for other property or effects upon which the court may fasten a trust, and which may be identified, does not deprive the court of its power to subject the thing substituted. Otherwise, all that a fraudulent grantee would have to do in order to avoid the claims of the creditors of the grantor, would be to exchange the property for other effects. We think the property substituted, or for which the land was exchanged, if of such a nature that it can be pursued and identified, is subject to the same equities which attached to the land itself. "Courts of equity," says Judge Story, "in regard to fraud, whether it be constructive or actual, have adopted principles exceedingly broad and comprehensive, in the application of their remedial justice; and especially where there is any fraud touching property, they will interfere and administer a wholesome, and sometimes even a stern justice, in favor of innocent persons, who are sufferers by it, without any fault on their own side." 2 Story's Eq. § 1265.

And, speaking of a change of the subject matter of the trust into other property, he remarks, "it matters not in the slightest degree, into whatever other form, different from the original, the change may have been made, whether it be that of promissory notes, or of goods, or of stocks; for the pro-

duct of a substitute for the original thing still follows the nature of the thing itself, so long as it can be ascertained to be such. The right ceases only when the means of ascertainment fail; which, of course, is the case when the subject matter is turned into money, and mixed and confounded in a general mass of property of the same description." Ib., § 1259.

Applying these principles to the case before us, we have shown, that according to the settled law, the transfer to Hall being absolute, with a reservation by parol that it should operate merely as a security, was fraudulent as against the creditors of Young. He has sold the land to Price with other land, it being estimated in the contract at, say three hundred dollars, the whole land selling for eight hundred dollars, and he received two horses rated at, say three hundred dollars, and notes for five hundred dollars. A portion of the substituted property can be identified, and we think a trust should be fastened upon it in favor of the creditor, to the extent of the actual cash value of the land sold by William Young to Hall, at the time of the sale to Price, and that the notes be collected and the property sold to raise that sum, unless Hall shall pay the same.

According to the view we have taken of the case, it was unnecessary to have made Price a party to the bill, as his title is conceded; and the creditor elects to charge the product of the sale in lieu of the land, which he well may do, even had Price not purchased in good faith. Watts v. Girdlestone, 6 Beav. R. 188; 2 Story's Jurisp. §§ 1262, 1273, 5 Edition.

It is argued, that Hall cannot be regarded as occupying towards this property a worse position than if he had taken a mortgage which he had failed to record, and that having sold the land before the plaintiff's judgment was rendered, or any lien attached, and being a *bona fide* creditor of Young, he has a superior equity to that of the plaintiff. The fact that he was a *bona fide* creditor, only proves that the transfer by Young to him was upon a valuable consideration. This is not sufficient. Since the decision in Twyne's case, it has been understood to be the settled law, "that evidence of the fraudulent intent supersedes the whole inquiry into the consideration; for no merit in any of the parties to a transaction

can save it, if it carries intrinsically or extrinsically the plain evidence of fraud." Roberts on Conveyances, marg. 548. And it may be observed, that there is no plainer evidence of fraud, than an absolute paper transfer by an insolvent, with a secret parol trust in contravention of such conveyance. In the celebrated case just cited, it was graphically said, "fraud is always apparreled and clad with a trust." Especially would this doctrine apply, when, as in this case, the vendor seems to have been almost the exclusive manager of the property; rents the land, then sells it, and is found collecting the notes and controlling the property, the proceeds of the sale. True, he says he has done all this as the agent of his vendee; but he acts for himself too, for, as we have shown, he had a beneficial interest in the land, and if by husbanding the proceeds he can satisfy Hall, and leave a surplus, that would belong to him. Irrespective of the consideration that the parties may not have conceived such arrangement to be fraudulent, the law regards it as such, and it is our duty so to pronounce it.

Let the decree be reversed, and the cause remanded.