# Sims *v.* Gaines.

*Bill in Equity by Judgment Creditor, to set aside Fraudulent Conveyance by Insolvent Debtor.*

1. *Contracts fraudulent as against creditors.*—So far as the validity of any particular contract or transaction with a debtor is concerned, there is no practical difference between fraud in fact and fraud in law: whenever the effect of the transaction is to hinder, delay, or defraud his creditors, the law infers the intent, though there may be no evidence of a corrupt motive, and declares the transaction fraudulent.

2. *Validity of absolute conveyance, intended as mortgage.*—A conveyance of lands, absolute on its face, but intended only as a mortgage, or security for a debt, is fraudulent and void as against existing creditors, although there may have been no actual intent to defraud.

3. *Absolute transfer, and contemporaneous agreement to reconvey, construed together as mortgage.*—Where a purchaser of lands at a sale made by a register in chancery, having given his note, with surety, for the purchase-money, and received from the register a certificate of purchase, afterwards transfers the certificate to his surety, on the recited consideration of his payment of the debt; and the surety, at the same time, by a separate writing, agrees and binds himself to convey the lands to the principal, his heirs or assigns, whenever the money so paid by him, with interest, is refunded; the two instruments are to be construed together as one, and, being so construed, they constitute a mortgage.

[Sims v. Gaines.]

4. *Conveyance with secret reservation, for benefit of grantor.*—Any secret reservation of a valuable right to the grantor, a debtor in embarrassed circumstances, renders an absolute conveyance void as to existing creditors; and the court will not enter into any nice calculation of the absolute value of the right so reserved. the retention of possession during the current year, and an equity of redemption in lands mortgaged to their full value, are each a valuable right.

5. *Liability of property to debts.*—Aside from constitutional and statutory exemptions, a debtor can not own any property, or interest in property, which can not be reached and subjected to the payment of his debts, either at law or in equity; and a fraudulent conveyance of any property, or interest, or right of property, which might be subjected to the payment of his debts, may be avoided by his creditors.

APPEAL from the Chancery Court of Greene.

Heard before the Hon. A. W. DILLARD.

The bill in this case was filed on the 21st September, 1877, by Thomas W. Sims, as a judgment creditor of Fountaine Gaines, against the said Gaines, and against the personal representative, heirs, and distributees of the estate of David Bragg, deceased; and sought to subject to the satisfaction of the complainant's judgment certain lands, of which said Bragg died seized and possessed, and which his personal representative was proceeding to sell under an order of the Probate Court; and to vacate and set aside, on the ground of fraud, certain transactions between said Gaines and Bragg, by means of which the latter obtained and held the land. The complainant's judgment was rendered on the 2d April, 1874, in favor of the late firm of Sims, Harrison & Co., of which he was a partner, and was founded on the promissory note of said Gaines, dated the 20th June, 1873, and payable two months after date; and it was admitted that the complainant was the sole owner of the judgment. An execution was issued on the judgment on the 27th April, 1874, and was returned by the sheriff, on the 1st October following, "No property found." The land sought to be reached by the bill, and subjected to the satisfaction of this judgment, had belonged to one S. S. Sorsby, and was sold, after his death, by the register of said Chancery Court, on the 9th January, 1871; said Fountaine Gaines becoming the purchaser at the sale, receiving the register's certificate of purchase, and executing his note for the purchase-money, $3,471.53, with said David Bragg and B. Gully as his sureties. The sale was reported to the court, and was confirmed on the 8th June, 1871; and the note not being paid at maturity, an action was brought on it, in the name of the register, and a judgment recovered for $3,818.68 on the 3d April, 1873.. An execution was regularly issued on this judgment, on which were indorsed the following payments, as shown by the sheriff's return: $1,500, paid by Bragg, December 24th, 1873; $1,229.29, paid by Gaines, Jan_

uary 31st, 1874; $59.28, paid by Gaines, February 5th, 1874; and the residue, $997.75 net, paid by Bragg, March 14th, 1874.

On the 30th March, 1874, Gaines transferred to Bragg the register's certificate of purchase, by written assignment as follows: "For value received, and in consideration of the payment of the note, and interest and costs (viz., $3,978), which is paid for said land by David Bragg, as my security, I assign this certificate to said Bragg, and request the court to order the register to make a deed to him for said Grove tract of land;" which was signed by said Gaines, and attested by a witness. At the same time, Bragg executed and delivered to Gaines another writing, in these words: "This is to certify, that F. Gaines paid to W. P. Webb, attorney for plaintiff in the case of W. F. Pierce, register, against said Gaines and myself, as his security. on his note and judgment in the Circuit Court of Greene county, the sum of $1,288.57, which was credited on said judgment and execution as of the 12th March, 1874; and in consideration of the balance due on said judgment and execution, with interest to June 8th, 1874, viz., $2,797.60, paid by me as his security, the said Gaines has assigned to me the certificate of the register for the purchase of said land, called the 'Grove tract,' about 485.09 acres, and requested the court to order the title to be made direct to me for said tract; and when said Gaines pays and refunds to me the said sum of $2,797.60, with interest thereon, I will convey the title of said lands to said Gaines, his heirs, or assigns. This is given as a showing to said Gaines for the money ($1,289.57) paid by him on said note and judgment, for said lands. Given under my hand and seal," &c. (Signed by said Bragg, and attested by W. P. Webb.) On the 5th June, 1874, having obtained this assignment of the certificate, Bragg filed his petition in the Chancery Court, alleging the assignment "for and in consideration of the said sum of $3,978 paid by him as surety on said land note," and asking that a deed for the land be made to him by the register; and the petition being uncontested, the chancellor made an order as prayed, and a deed was accordingly executed to Bragg by the register.

The bill alleged that the certificate of purchase was fraudulently transferred by Gaines to Bragg, while the suit of Sims, Harrison & Co. was pending against him, and only a few days before the rendition of the judgment; that, at the time the assignment was made, there was an agreement and understanding, between Gaines and Bragg, that the former should retain the possession of the land, and that Bragg should convey the title to him on being refunded the money

[Sims v. Gaines.]

paid by him as surety, which was much less than the amount specified in the assignment. The assignment, and the proceedings in court had on it, were made exhibits to the bill, and were alleged to be fraudulent as against the complainant's rights; and the prayer was, that they be vacated and declared void, and that the lands be subjected to the satisfaction of the complainant's judgment.

Bragg having died, intestate, in October, 1874, his administrator and heirs-at-law were made defendants to the bill; and a joint answer was filed by the administrator and the adult heirs. They admitted the assignment of the certificate of purchase, but denied that it was done with any fraudulent intent, or could operate any fraud on the complainant, or any other creditor, because Gaines had only an imperfect equity in the lands, which was not subject to execution at law; admitted that Gaines had made the payments shown by the indorsements on the execution, but alleged that, in consequence of the depreciation in the price and value of the land, it was not worth, at the time the certificate was assigned, more than the amount paid by Bragg on the judgment; and they offered to release and transfer all their interest in the land, on repayment of the amount paid by said David Bragg, with interest thereon. As to the personal transactions between said Bragg and Gaines, they adopted the answer of their co-defendant, said Gaines, who also denied all the allegations and charges of fraud, and admitted the facts to be as recited in the written instruments. He alleged, also, that on or about the 1st February, 1874, when he found that he could not procure the money to satisfy the execution, and Bragg paid $1,500 on it, he promised to secure and indemnify said Bragg on account of said payment and liability, and executed to him, for that purpose, a mortgage conveying his interest in said tract of land, with another tract; and that afterwards, on or about the 30th March, 1874, when Bragg paid the balance due on the execution, he made the assignment of the certificate of purchase, and Bragg at the same time executed to him "a certificate or receipt showing the true nature of the transaction," being the writing above set out, which was made an exhibit to his answer; and he alleged that this was intended as a settlement of the mortgage, or substitute and exchange for it, and was a legitimate transaction for the better security and indemnity of Bragg as his surety. This mortgage, a copy of which was annexed to the answer as an exhibit, is without date, but was admitted to record, on proof by one of the subscribing witnesses, on the 2d February, 1874; recited Bragg's liability as surety for Gaines, and the payment of $1,500 by him; and authorized

[Sims v. Gaines.]

Bragg to sell the land, unless the entire debt was paid by Gaines on or before the 1st April, 1874. The answer alleged, also, that when Bragg's petition came before the chancellor, it was resisted by the complainant's solicitor; and that the chancellor, on proof of the payment of the money by Bragg, held that it was a lawful and proper transaction, and therefore ordered a conveyance to be executed to him by the register. The answer admitted, also, "that said Bragg did not take possession of said land in his life-time;" but alleged that "this respondent agreed with his administrator to pay rent for said land after the death of said Bragg, and has paid him about $630 for the rent for the years 1875 and 1876;" and the receipts for the rent were produced and proved.

On final hearing, on pleadings and proof, the chancellor held that the complainant had failed to make out his case as alleged: that the transaction between Gaines and Bragg, as shown by the writings executed between them, was a legitimate arrangement between principal and surety; and that the facts proved, taken in connection with the denials of fraud, might consist with honesty and fair dealing, and therefore could not be pronounced fraudulent. He further held, that the complainant, as a judgment creditor, might have a right to redeem the land, but could not have that relief under the bill as framed. He therefore dismissed the bill, and his decree is here assigned as error.

COLEMAN & CLARK, and E. MORGAN, for appellant.

W. P. WEBB, contra.

BRICKELL, C. J.—We shall not enter on the inquiry, whether, in the transaction impeached by the bill, the parties had an actual intent to defraud the creditors of Gaines. Such an intent would, of course, vitiate the transaction, and would constitute actual, as distinguished from constructive fraud—fraud in fact, and not merely fraud in law. There is not, for any practical purpose, so far as the validity of the particular transaction may be concerned, any difference between fraud in fact and fraud in law: between a fraud proved by direct evidence, and a fraud inferred by law from facts which are consistent with the absence of an actual intent to defraud. Whenever the effect of a particular transaction with a debtor is to hinder, delay, or defraud creditors, the law infers the intent, though there may be no evidence of a corrupt or dishonorable motive. The law interposes, and declares that "every man is presumed to intend the natural

and necessary consequences of his acts; and the courts must presume the intention to exist, when the consequences must necessarily follow, and will not listen to an argument against it."—*Pope v. Wilson*, 7 Ala. 694; *Wiley v. Knight*, 27 Ala. 336.

The law is settled in this State, that an absolute conveyance of lands, intended as a security for a debt—in other words, a mortgage—is fraudulent and void as to existing creditors. The parties may not intend fraud—there may be no actual intent to hinder, delay, or defraud creditors; yet, because such is its inevitable consequence, the law condemns it. *Bryant v. Young*, 21 Ala. 264; *Hartshorn v. Williams*, 31 Ala. 149.

The assignment by Gaines of the certificate of purchase of the lands to Bragg, and the cotemporaneous instrument executed by Bragg to Gaines, must be treated as a single instrument, and be construed together. It is a familiar principle, that when several instruments are executed at the same time, between the same parties, and having reference to the same subject-matter, they will be regarded as one instrument, and be construed together. If the instrument executed by Bragg to Gaines had been incorporated into the assignment of the certificate of purchase, every essential element and characteristic of a mortgage would have been in terms expressed. The recital that the consideration of the assignment was a debt due from Gaines to Bragg, the extinguishment or satisfaction of which is not declared, followed by the declaration of Bragg that, when Gaines paid the debt, he would convey title to him, indicates very clearly that it was security for the debt which was intended, and not the transfer of the ownership of the lands, Gaines reserving only a right to repurchase.

Independent of any and all questions of the adequacy of consideration, and of the intention of the parties, any secret trust whatever, any secret reservation of a benefit for an embarrassed debtor, renders an absolute conveyance void as to existing creditors. The ground upon which they are condemned is because of their tendency and effect to hinder, delay, and defraud creditors. The fraudulent intent is deduced from the act, and the parties are not heard to gainsay the presumption. An equity of redemption is property—is a valuable right, capable of being subjected to the payment of debts, in courts of law and of equity; and a transaction, by which an embarrassed debtor conceals its existence from his creditors, must hinder and delay them.

There is still another feature of the transaction, which must be considered. It was one of the considerations moving Gaines to the assignment, that he should use and occupy

[Sims v. Gaines.]

the lands, during the year 1874, free from rent. It can not be supposed that, under any circumstances, the law will permit a failing debtor to sell or convey his lands, unconditionally, absolutely, so far as is apparent on the face of the instruments to which creditors can have access, and yet reserve to himself the right to the use and occupation thereof for a period of time which may be a source of profit to him.—*Lukins v. Aird*, 6 Wallace, 78. All such secret arrangements, by which a debtor obtains valuable rights, to the prejudice of his creditors, are fraudulent.

Conveyances or transfers of property, not liable to the payment of debts, can not, as is argued by the counsel for the appellees, operate to defraud creditors, and will not at their instance be avoided. But, it is quite a mistake to suppose that, when Gaines made to Bragg the assignment of the certificate of purchase, he had not an estate in the lands which his creditors could reach. The purchase-money not having been fully paid, that estate was not subject to execution at law. It was an equity, attended with the right to the possession of the lands, until by some appropriate proceeding they were subjected to the payment of the purchase-money; and a right, on paying the purchase-money, to the legal estate. The exemptions by statute and by the constitution being allowed, no man can have a legal or equitable right in or to property, real or personal, which is not subject to the payment of his debts, and which may not be reached, either at law, or in equity. Sims, having obtained judgment at law, if the true character of the transaction had been revealed in the writings—if the two had been united in one instrument, and spread upon record, as it must have been to prevail against him—could have levied on and sold the equity of redemption; or, if there were obstacles to the levy of the execution at law, the aid of a court of equity could have been invoked. These are substantial, valuable rights of the creditor, not placed at the mercy of the debtor; and it is as obnoxious to the statute of frauds to hinder and delay them, as would be an alienation of visible property, which could be reached directly and only by an execution at law. It can make no difference that, because of the depression in the value of the lands when this transaction occurred, the equity of redemption, and the use and occupation of the lands, were of but little value. A real, substantial interest was secretly reserved to the debtor, which might, when the causes then depressing the market value of real estate were removed, become more valuable than the amount of the debt of Sims. The law must condemn the transaction, and can not enter into nice calculations of the value of the benefit the debtor has reserved.

The decree of the chancellor is reversed, and the cause is remanded, with instructions to enter a decree setting aside the conveyance and assignment to Bragg as fraudulent, and subjecting the lands to the satisfaction of the complainant's judgment.