# Tryon *et al. v.* Flournoy & Epping *et al.*

*Creditor's Bill in Equity to Set Aside Fraudulent Conveyance, and for Appointment of Receiver.*

1. *Sale by insolvent debtor to creditor; validity as against other creditors.*—A sale of property by a failing or insolvent debtor, at a fair and adequate price, in absolute payment of an honest debt, no benefit whatever being reserved to himself, will be sustained by the courts, as a valid exercise of his right of preference, although he thereby disabled himself to pay his other creditors, and may have intended to defraud them; yet, if it were shown that the purchasing creditor knowingly participated and intentionally aided the debtor in other transactions, which proximately preceded his failure in business, it would possibly be different.

2. *Unrecorded absolute conveyance, intended only as security for loan; validity as against creditors.*—A conveyance absolute in form, but intended only as security for a loan, as shown by a bond with condition to convey on payment of the debt, the papers not being recorded, and no change of possession being shown, is constructively fraudulent as against existing creditors; but, as against subsequent creditors, a fraudulent intent, or actual fraud, must be shown.

3. *Same; ignorance of law, as excuse for failure to record; concealment of contents of deed.*—If the creditor, being a resident of Georgia, was ignorant of the fact that the laws of Alabama required registration

[Tryon et al. v. Flournoy & Epping et al.]

of such conveyance and defeasance, and for this reason failed to have it recorded until after the lapse of nine or ten months, this would be sufficient to rebut any fraudulent intent on his part; nor can he be charged with a fraudulent intent, because the debtor, when acknowledging the conveyance, attempted to conceal its contents.

APPEAL from the Chancery Court of Henry.

Heard before the Hon. JOHN A. FOSTER.

The bill in this case was filed by Wm. H. Tryon & Co., and others, as creditors of Robt. H. Walker, on the 24th January, 1884. The bill charged that the defendant, Walker, had been carrying on a large mercantile business for a number of years at Columbia, Alabama, and was in possession of and claiming a large amount of property; that, suddenly, on the 24th day of October, 1883, he claimed to have become insolvent, and issued a circular letter to his creditors announcing that fact; that on said date, the said Walker made a general assignment for the benefit of his creditors, a copy of which is made part of complainants' bill, in which he turned over and delivered to one E. C. Thomas, the assignee named in said deed of assignment, property of small value, consisting chiefly of worthless notes and accounts; that said assignee had collected some money out of the assets passing into his hands, but on failure to make a bond had been removed by order of the register, and no one appointed to succeed to the execution of the trust; that the defendant, Walker, claims to have conveyed by deed executed on the 15th of January, 1883, to Flournoy & Epping, a large amount of valuable real estate, described in the bill, which complainants charge was made to hinder, delay or defraud them and the other creditors of the said Walker; that said deed, though purporting to have been made on the 15th of January, 1883, was, in fact, not made until the 25th of October, 1883, and that Flournoy & Epping never knew of its existence till that day; that said conveyance was not probated on the 15th of January, 1883, as it purported to be, but was in truth not probated until the 25th of October following; that said conveyance, while purporting to be an absolute conveyance in payment of a debt of ten thousand dollars, alleged to be due from said Walker to Flournoy & Epping, it was given as a security for a past-due debt of much less amount, and that there was a secret reservation of an interest to said Walker; that it was accepted by Flournoy & Epping with a knowledge of the fraudulent purpose with which it was executed by the said Walker. The bill further alleges that on the 24th of October, 1883, the said Walker was in the possession of a large stock of general merchandise, which he, on said day, claimed to have sold to his father, his brother-in-law and his book-keeper; which sale, it is averred,

[Tryon et al. v. Flournoy & Epping et al.]

was made for the purpose of hindering, delaying and de-
frauding complainants and the other creditors of said Walker;
that the consideration of said sale was fictitious and was made
to secure a secret benefit to said Walker, and that the trans-
ferees of said stock of merchandise received the same in
fraudulent collusion with said Walker, whom they knew to be
insolvent, and was seeking to hinder, delay and defraud his
creditors.

The bill charges that these various conveyances were exe-
cuted at or near the same time, and constitute but one transac-
tion, operating to convey substantially all the property of said
R. H. Walker, and prays that the said conveyances be declared
a general assignment for the benefit of his creditors. The bill
further prayed that the conveyances to Flournoy & Epping,
and to F. M. Walker, John A. Hayes and C. E. Walker, the
aforesaid father, brother-in-law and book-keeper of said R. H.
Walker, be declared void; asks for the appointment of a re-
ceiver, to whom the assignee, Thomas, should account; that
Flournoy & Epping be enjoined from disposing of the property
received by them, and for an account.

The defendant demurred to the bill on the ground of repug-
nancy, which demurrer was sustained, and the complainants per-
mitted to amend their bill. Answers were then made denying
the allegations of the bill and insisting upon the *bona fides* of
the conveyances assailed by the complainants. The cause was
submitted on pleadings and testimony, and a decree rendered
denying complainants' right to relief and dismissing their bill.
From this decree of the chancellor complainants take this ap-
peal.

PUGH & MERRILL, McLEROY & COMER, H. D. CLAYTON, Jr.,
D. C. BLACKWELL and P. A. McDANIEL, Jr., for appellants,
cited, *Sims v. Gaines*, 64 Ala. 392; *Seals v. Robinson*, 75 Ala.
372; *Pulliam v. Newberry*, 41 Ala. 168; *E. C. & B. Co.
v. Avery*, 38 Am. R. 389; *Hall & Co. v. Renfro Bros.*, 75 Ala.
121; *Pope v. Wilson*, 9 Ala. 694; *Wiley, Banks & Co. v.
Knight*, 27 Ala. 336; *Lakins v. Aird*, 6 Wal. 78; *Seaman
v. Nolen*, 68 Ala. 463; *Crawford v. Kirksey*, 55 Ala. 282;
*Benedict v. Renfro*, 75 Ala. 125; *Hunt v. Rousmariere*,
1 Pet. 1; *Larkins v. Riddle*, 21 Ala. 252; 1 Fonb. Eq. B.
1, ch. 2, § 7, and authorities cited in note V; *Marshall v.
Beans*, 12 Ga. 61; *Young v. Lehman*, 63 Ala. 519; *Cook v.
Johnson*, 14 N. J. (Eq.) 51; *Croone v. Bivens*, 2 Head (Tenn.),
339; *Thurmond v. Reese*, 3 Ga. 449; *Cotnell v. Radway*,
22 Wis. 260; *Reese v Bradford*, 13 Ala. 837.

OATES & COWAN, and J. W. FOSTER, *contra.*—1. As to

[Tryon et al. v. Flournoy & Epping et al.]

Walker, Hayes & Co., and F. M. Walker: The complainants, creditors of R. H. Walker, seek to set aside and declare fraudulent certain conveyances made by R. H. Walker, viz.: a conveyance of goods, wares and merchandise to F. M. Walker, C. E. Walker and John A. Hayes, made on 23d October, 1883; a conveyance of a stock of goods to said F. M. Walker on the 4th of October, 1883, and a conveyance to Flournoy & Epping of certain real estate, made on 15th January, 1883. Complainants allege fraud, and it is alone upon that ground that they rest their right to recover, having amended their bill striking out all averments that said conveyances constitute an assignment. The proof is clear that the debt from R. H. Walker to these defendants was just, and the property conveyed was in payment of said indebtedness, and was sold at a fair valuation. Where a sale is absolute, unconditional and free from all reservation of an interest or benefit in the grantor, in payment of an antecedent debt, it is good in law whatever may have been the condition of the grantors.—69 Ala. 191; 69 Ala. 41; 39 Ala. 60; 68 Ala. 449; 68 Ala. 463; 55 Ala. 382; 50 Ala. 590; 58 Ala. 627; 76 Ala. 103.

2. As to FLOURNOY & EPPING :—A conveyance, absolute on its face, but intended only as a mortgage, or security for a debt, is fraudulent and void as against *existing* creditors without regard to the intention of the parties.—*Sims v. Gaines*, 64 Ala. 392; 21 Ala. 264; 31 Ala. 149. The law confines the operation of this rule to creditors whose demands *exist at the time of such transaction.*—Authorities *supra* ; 59 Ala. 612 ; 62 Ala. 477; 65 Ala. 343. To vitiate the conveyance under which Flournoy & Epping hold, upon the rule above stated, it must appear that complainants' demands *existed* at the date of such deed. Complainants in their bill, set out the date of their respective demands, and they are all *subsequent* to the deed. Therefore, it cannot be contended that complainants were "*existing creditors*" at the date of said deed, or that the same is void under the rule stated above. As to creditors whose demands accrue *subsequent* to the deed, a different rule applies. *Actual fraud* must appear in the transaction else the conveyance is good.—*Seals v. Robinson & Co.*, 75 Ala. 363. And then both grantor and grantee must participate in the fraudulent intent.—*Marshall v. Croom*, 60 Ala. 121 ; *Warren & Burch v. Jones*, 68 Ala. 499; *Shelly & Finn v. Edwards*, 75 Ala. 411. The instrument being executed and delivered before complainants' debts were contracted, the *onus* is on them to prove the fraudulent intent.—*Buchanan v. Buchanan*, 72 Ala. 55 ; *Lyne's Admr. v. Wann*, 72 Ala. 43. If the facts and circumstances in evidence are susceptible of an honest in-

[Tryon et al. v. Flournoy & Epping et al.]

tent that construction will be placed upon them. Courts will not strive to force conclusions of fraud.—67 Ala. 542. In this case there are only two facts which the law takes as badges of fraud: 1st, retention of possession by Walker; 2d, failure to record the deed until after Walker's failure, both of which are explained. In the absence of sufficient explanation, the court, under the rule above, without other and stronger evidence thereof, would not infer fraud. The deed to F. & E., accompanied with a promise to reconvey, is in law a mortgage. This deed or mortgage, taken prior to complainants' demands, was recorded before complainants filed their bill or took any step which could create a lien on the property. The instrument is based on a *bona fide* loan of $10,000.00. When F. & E. accepted the deed Walker had credit with them to the amount of $10,000.00 for which he could draw *any time*, and which they, under the contract, were *bound* to pay. He did draw it all. Flournoy & Epping had great confidence in Walker's business capacity, and success in business, and had no apprehension as to the prompt payment of the debt. They thought that they had in Alabama, as in Georgia, twelve months in which to record their deed. They also thought that they were furnishing the entire means which Walker was using in his business outside of his own. Upon these facts, *none disputed*, it is submitted that Flournoy & Epping can not be said to have participated in any wrong or *fraud in fact*—such as must exist in this character of case in order to set aside and vitiate their deed. The facts are *fairly* susceptible of an honest intent, and that construction should be placed upon them.

STONE, C. J.—It is not contended for appellants that they have made a case for recovery as to the stock of merchandise sold and conveyed to F. M. Walker, C. E. Walker and John A. Hayes. This conveyance was made on the eve of R. H. Walker's insolvency, and was an open confession that the latter had failed in business. There is no material conflict in the testimony as to this transaction. The alleged indebtedness of R. H. Walker is shown, and the conveyance was made in absolute payment of such indebtedness. The testimony is that the goods were sold at their reasonable value, and there is an absence of evidence that any benefit was reserved or secured to R. H. Walker, the seller. These facts the testimony establishes, and there is nothing found in the record to overturn or weaken them. On these facts, it is immaterial what private motive may have influenced R. H. Walker's act. There is, under our rulings, no room for fraud in such a transaction, and it must stand. The reasons on which this principle rests have been so often stated we need not repeat them.—*Hodges v. Cole-*

[Tryon et al. v. Flournoy & Epping et al.]

*man*, 76 Ala. 103 ; *Crawford v. Kirksey*, 55 Ala. 282 ; *Flewellen v. Crane*, 58 Ala. 627 ; *Chamberlain v. Dorrance*, 69 Ala. 40. The law allows a failing debtor to prefer and provide for one or more creditors at the expense of others. It therefore allows him, by paying one class in full, to disable himself to pay the others. Even if he intends this, it can not impair the validity of the conveyance, unless he thereby secures to himself some benefit he would not otherwise enjoy.—*Seaman v. Nolen*, 68 Ala. 463.

What is said above is based on the fact that F. M. & C. E. Walker and Hayes were creditors of R. H. Walker in the amounts claimed, and that they bought the goods by absolute purchase and at their reasonably fair value ; and an entire want of proof that any benefit was secured to, or trust reserved for the seller. It would possibly be different if the purchasers were shown to have participated knowingly, and aided R. H. Walker intentionally, in the transaction which proximately preceded his failure in business ; transactions which, unexplained, leave room for unfavorable comment. In 1882, R. H. & F. M. Walker did business in partnership. In December of that year R. H., the son, purchased the interest of F. M., the father, and became sole proprietor of the business. He agreed to take all the assets, assume all the liabilities, cancel the individual debt of F. M. to the firm—amount not stated—and pay him for his interest three thousand dollars. If they were equal partners, this was an admission that the assets of the firm exceeded its liabilities by six thousand dollars. In addition to this R. H. owned the storehouse, warehouses and other real property, valued by no witness at less than ten thousand dollars. On the pledge of this real estate as a security, R. H. borrowed ten thousand dollars from Flournoy & Epping, and with it, supplemented probably with collections, paid off all liabilities accruing and maturing during the season of 1882–3. The record does not inform us of the extent of business done in 1883, farther than that from some day late in August until October 23, the sales aggregated nine thousand and eight hundred dollars. As cotton was then being marketed, it is reasonable to suppose a considerable proportion of these sales were made for cash, or on short credit. Now, between August 29, and October 20—say, during 53 days—R. H. Walker received in cash and cotton from F. M. & C. E. Walker over nineteen thousand dollars, and paid to and for them only some twenty-six hundred dollars; leaving sixteen thousand and six hundred dollars, excess of receipts in money and property convertible into money, over disbusements made on that, or any other account shown. In this estimate we do not include a payment of thirty-two hundred and sixty dollars made by him to them in wagons and buggies,

which purport to have been turned over to them by car load and invoice, as they were received from the manufacturers. Whether those wagons and buggies had been paid for, or their purchase constitutes a part of the claim this suit seeks to enforce, the record furnishes no means of determining.

Without estimating probable receipts from other sources, we have thus traced to him receipts within the two months preceding his failure between sixteen and twenty thousand dollars in money and cotton convertible into money, while his debts maturing November 1, 1883, disclosed by the creditors' bill we have in hand, foots up about ten thousand dollars; and adding to this sum his other paper, as disclosed in the same way, which would mature by January 1, 1884, the whole sum is less than thirteen thousand dollars. Yet, he paid his preferred creditors in merchandise he had bought from others and had not paid for, and we are left to conjecture what became of the large amount of money and cotton we have traced to his hands. It is not mentioned in his assignment.

Another reflection. Flournoy & Epping, as shown by this record, were factors and commission merchants, and for years had been selling R. H. Walker's cotton, handled in his business. He was a merchant of ten years standing. Yet this record shows that R. H. Walker received from F. M. & C. E. Walker more than three hundred bales of cotton in excess of the only thirty-two bales which went forward to Flournoy & Epping. It is common knowledge that warehousemen advance to their customers as a means of increasing their business, and the inference is almost irresistible that the loan of ten thousand dollars from Flournoy & Epping to Walker was made chiefly in the interest of their warehouse business. To what uses was this cotton applied? The record does not inform us.

We have then the case of a merchant who, commencing a new business-year with real estate worth ten thousand dollars or more, merchandise and bills receivable worth six thousand dollars above his liabilities, and an established credit, yet in less than ten months goes into insolvency and makes an assignment of unknown and uncertain value, with no tangible reason given why the disaster fell so suddenly upon him.

We have indulged in these reflections, because they are suggested by the facts shown in the record. It is possible they could be explained, and made to harmonize with honesty of purpose. We will not pronounce unqualified condemnation. But should not the fact of such abhorrent possibilities invite inquiry whether or not a remedy can be provided? Should there not be some restraints on unlimited power of preference? And should the fraudulent withholding or secretion of goods

be left amenable only to the powerless mandate of a *fieri fa-cias?*

The transaction which we are asked to pronounce fraudulent is R. H. Walker's conveyance to Flournoy & Epping. This was a conveyance stipulated for in December, 1882, and consummated about January 15, 1883. It was in form an absolute conveyance of real estate, including the store-house in which R. H. Walker was doing business, and much other property; the value being ten thousand dollars, or more. This conveyance, although in form absolute, was only intended as security for the repayment of ten thousand dollars, borrowed by Walker from Flournoy & Epping. They gave him a contemporaneous bond to reconvey to him, when the said loan was repaid. These papers were not recorded, nor was there any change of possession until after Walker's failure. On October 26, 1883, the deed from Walker to Flournoy & Epping was filed in the proper office for registration; and possession of the property then passed to the latter. The bond to reconvey is not shown to have been recorded. The contention is, that by failure to take possession, or to give notice by the registration of the deed, Flournoy & Epping committed a fraud on the complainants in this suit, who subsequently trusted Walker on the faith that he continued to be the owner of the valuable real estate he had owned, and which they permitted him to continue to occupy, without visible evidences of changed ownership.

There can be no question that if this conveyance was assailed by creditors whose demands existed at the time it was made, the deed would be pronounced fraudulent as against them, no matter what motive influenced its execution.—*Sims v. Gaines,* 64 Ala. 392; *Seals v. Robinson,* 75 Ala. 363; *Larkins v. Aird,* 6 Wall. 78; *Eaton v. Avery,* 83 N. Y. 31. The present suit, however, is by subsequent creditors. Their demands were the result of purchases made by Walker after he had conveyed to Flournoy & Epping. The Code, §§ 2166, 2167, 2199, 2200, do not in terms apply to this case. To constitute a conveyance fraudulent as against subsequent creditors, there must be an *actual intent* to defraud. Constructive fraud is not enough. See authorities on the briefs of counsel. Both Flournoy and Epping were examined as witnesses, and each testifies that he did not know registration was necessary. They reside in Georgia, and say they thought they were allowed twelve months within which to have the deed recorded—that being the law of Georgia, as they assert. Now, while ignorance of law is no excuse for failing to perform an act of positive, legal obligation, it does exculpate, in such a case as this, from all intentional wrong. To constitute intentional fraud, the failure to record

[Wilkinson v. Black.]

must have had its motive in an intention to uphold Walker's credit, or to enable him to obtain goods from others on time, which he would not be likely to do, if the registration were made. It is shown that Walker, when he acknowledged the deed, desired to conceal its contents. This is a suspicious circumstance against him; and if knowledge of it could be traced to Flournoy & Epping, or if there was any proof tending to show that the latter were informed he wished to conceal the fact of such conveyance, this would possibly justify us in holding them participants in his fraud. There is no such testimony. Presuming, as we must, that the chancellor properly weighed the testimony, and came to correct conclusions of fact, there is not enough in the record to convince us clearly that he erred; and in the absence of such conviction, we must affirm his decree.—*Rather v. Young*, 56 Ala. 90; *Nooe v. Garner*, 70 Ala. 443.

Affirmed.