# Birmingham Dry Goods Co. v. Roden & Co.

## Attachment and Claim Suit.

1. *Fraudulent conveyances; secret agreement between mortgagor and mortgagee, and reservation of benefit to mortgagor.*—A merchant, in failing condition, executed to one of his creditors, who knew of his financial embarrassment, a mortgage on his entire stock of merchandise, in which it was implied that the mortgagor was to remain in possession of the property until the law day, and which provided that if the debt secured was not paid at the specified time the mortgagee might take possession and sell the property, returning any surplus over the expenses and amount of the debt to the mortgagor, which mortgage was recorded. In about a half hour after the execution of such mortgage the parties entered into another written agreement in which the mortgagor renounced and released to the mortgagee all claim and benefit he had in the stock of goods conveyed in the mortgage, and in which it was stipulated that the mortgagor was to take charge of and sell for the mortgagee the said stock of merchandise, acting therein as the latter's agent, at a stipulated monthly salary, and paying over to him all money arising from the sale of said goods, which agreement was to be in effect until the mortgage debt was paid, but it was never recorded. *Held:* such agreement was a modification of the contract of the parties as set forth in the mortgage, which, being withheld from record, became and was a secret agreement, and, said mortgage, reserved a benefit to the debtor mortgagor, which rendered such transactions between said parties fraudulent and void as to the other creditors of the mortgagor; and after the payment of the mortgage debt out of the proceeds of sale of goods by the mortgagor, the mortgagee can not claim the stock of goods remaining in the mortgagor's possession as against the latter's attaching creditors.

APPEAL from the City Court of Birmingham.

Tried before the Hon. H. A. SHARPE.

The appellant, the Birmingham Dry Goods Company, sued out an attachment against W. J. Kelso, which was levied upon a stock of goods in possession of said Kelso, at the place where he had been accustomed to do business. Upon the levy of this attachment, the appellees, B. F. Roden & Co. interposed a claim to said property,

in accordance with the provisions of the statute ; and an issue was thereupon formed to try the right to the property so levied upon. The facts of the case, showing the basis of the claim of the claimants to the property levied upon, are sufficiently stated in the opinion ; and it is deemed unnecessary to set out the other evidence in detail. Among other charges requested by the plaintiff was the following : "I charge the jury that, if they believe the evidence, they must find for the plaintiff." The court refused to give this charge.

There was judgment rendered for the claimants. The plaintiff appeals, and assigns as error, among other rulings of the court, the refusal to give the several charges requested by it.

E. J. SMYER, for appellant.—1. A mortgage of a stock of merchandise where the mortgagor by implication, is to remain in possession of the goods and sell the same in the usual course of business, is void as against creditors both existing and subsequent, where the mortgage upon its face shows that the mortgagor is not acting as an agent for the mortgagee, and is not required to account to the mortgagee for the proceeds of sale.—Code of 1886, § 1730 ; *Hayes v. Westcott*, 91 Ala. 143 ; *Benedict v. Renfro*, 75 Ala. 121 ; *Renfro Bros. v. Goetter, Weil & Co.*, 78 Ala. 314 ; *Owens v. Hobbie & Teague*, 82 Ala. 468 ; *Murrey v. McNealy*, 86 Ala. 234 ; *McDermott v. Eborn*, 90 Ala. 258. Such a mortgage is void *per se* and no contemporaneous or subsequent agreement can impart validity to it.—*Owens v. Hobbie*, 82 Ala. 468 ; *Murray v. McNealy*, 86 Ala. 234.

2. Under the provisions of section 1730 of the Code of 1886, a conveyance of personal property made in trust for the use of the person making the same, is void against creditors existing or subsequent of such person and under the provisions of section 1735, a conveyance of real or personal property made with the intent to hinder, delay or defraud creditors is void.

3. The mortgage upon its face, showing that it was made in trust for the benefit of the mortgagor, it was the duty of the court, without looking further, to declare it void as against creditors. The written agreement is no part of the mortgage ; the mortgage is complete in itself, was recorded and is void on its face. If the writ-

[Birmingham Dry Goods Co. v. Roden & Co.]

ten agreement can be held to be a muniment of title, it is void as to creditors, because it reserves a benefit to Kelso.—*Stephens .v. Regenstein*, 89 Ala. 561; *McDowell v. Steel*, 87 Ala. 493; *Woodall v. Kelly*, 85 Ala. 375.

F. E. BLACKBURN and JOHN H. MILLER, *contra*.—1. The question of fraud *vel non* in a mortgage on a stock of merchandise is not one of law, but of fact and good faith, and should be left to the jury.—*Etheridge v. Sperry*, 139 U. S. 266; *Savings Bank v. Bates*, 120 U. S. 556; 1 Cobbey on Chattel Mortgages, §§ 237, 238, 307, 310.

2. Where it does not appear from the face of the instrument that it was made in trust for the use of the grantor, or with the intent to hinder, delay or defraud his creditors, the court cannot declare it invalid as to such creditors.—*Howell v. Bowman*, 10 So. Rep. 640.

3. The mere retention of possession by the mortgagor is not such a reservation of benefit to him as invalidates the instrument against his existing or subsequent creditors. Such a reservation is upheld by law until default if the debt be a just, *bona fide* one.—*Howell v. Bowman*, *supra*.

4. It is entirely competent and is not prohibited by any rule of law for a mortgagee to employ and constitute the mortgagor as his agent to sell and dispose of the property, and to account to the mortgagor for the proceeds arising from the sale thereof.—*Murray v. McNealy*, 86 Ala. 234; *Ullman v. Myrick*, 93 Ala. 532.

5. Even though by the terms of a mortgage, the mortgagor reserves to himself a benefit, the mortgage is not fraudulent and void if the mortgagor was solvent at the time of executing the mortgage.—*Thornton v. Cook*, 97 Ala. 630. It is a question for the jury to determine whether the mortgage on a stock of merchandise and an after-agreement by which the mortgagor was to sell and dispose of the property as the agent of the mortgagee, were parts of one transaction and to be construed as one instrument.—*Thornton v. Cook, supra.*

6. The presumption of fraud because of implied possession by mortgagor till default day may be rebutted by evidence showing the transaction fair and honest, and disclosing a reason for such a possession.—3 Amer. & Eng. Encyc. of Law, 196; *Ullman v. Myrick*, 93. Ala. 532.

33

HEAD, J.—A question of prime importance, in this case is, whether a mortgage executed by the defendant, Kelso, to the claimants, Roden & Co., is to be declared void as to creditors, upon the undisputed evidence. Kelso was a merchant at Pratt Mines, in Jefferson Co., Ala., and the mortgaged property consisted of the stock of goods which he had been using in carrying on his business as such. The law day was fixed at February 18th, 1893, the mortgage being executed on January 25th, 1893. There is no express stipulation to that effect, but it is implied, that Kelso should continue in possession of the property until the law day. After that time, the secured debt remaining unpaid, Roden & Co. were expressly authorized to take possession of the property and, after giving ten days notice by posting, &c., to sell the same at auction to the highest bidder for cash, before the court-house door of Jefferson county, and apply the proceeds to the payment of the expenses and the secured debt, returning any surplus to the mortgagor; and the mortgagees were authorized to bid and become purchasers at the sale. Without contemplating such an agreement, at the time the mortgage was made, but as an entirely independent different transaction, about an half hour afterwards, an agreement was entered into, in writing, by Kelso and Roden & Co., by which it was stipulated as follows : "the undersigned W. J. Kelso agrees to take charge of and sell for the said B. F. Roden & Company the stock of goods, wares and merchandise this day mortgaged by him to the said B. F. Roden & Co., the same being situated in his storehouse in Pratt Mines, Ala., he acting therein as the agent for the said B. F. Roden & Co., the mortgagees in said mortgage. It is further agreed that all monies arising from the sale of said goods shall immediately be the property of the said B. F. Roden & Co., the mortgagees in the mortgage, above referred to, and shall be paid over to them by the said W. J. Kelso on the last day of each month, beginning on January 31st, 1893, or oftener if required, and shall go as credits on the mortgage debt. It is expressly agreed and understood that the said W. J. Kelso, the mortgagor in said mortgage above referred to, renounces and releases all benefit he may have in said stock of goods, and that all sales shall be for and on account of said mortgagees, B. F. Roden

& Co. It is further agreed that if any of the goods and merchandise are sold on credit the accounts also are to pass to the mortgagees, B. F. Roden & Co., as their property, and be credited as so many payments of the mortgage debt. This agreement to hold and be in effect till mortgage debt with interest thereon is paid in full. It is agreed further that the said W. J. Kelso shall receive for his services the sum of fifty ($50.00) dollars per month, to be paid by the said B. F. Roden & Co." The mortgage was duly recorded on the day of its date. The subsequent agreement was never recorded. Kelso remained in possession, selling the goods and making payments to Roden & Co., and in March, 1893, their debt was paid in full; and thereafter the store remained in Kelso's hands. Kelso was paid his wages of $50 per month.

It is clear this agreement was a modification of the contract of the parties, as set forth in the mortgage, binding upon both parties. It was a substitution, in the mortgage, of the new provisions for the provisions therein which were inconsistent with them. As such, the new agreement became essentially a part of the mortgage, of like practical and legal effects as it had been set out therein and the first inconsistent provisions omitted. By it an entirely new and different defeasance and new and different methods of disposition of the goods were created, which, being withheld from the record, whilst the original was put upon the record as representing the contract of the parties, became and was a secret agreement. To all the world, therefore, the contract was represented to be that Kelso's right to possession should terminate on February 18th, 1893, and Roden & Co. should be then empowered to take and sell the goods at auction &c., whilst the real agreement, known only to the parties themselves, created the relation of principal and agent between themselves, removed all limitation upon the time of Kelso's right to possession, empowered him to sell the goods at private sale, and entitled him to receive for his services $50 per month.

In *Bryant v. Young*, 21 Ala. 264, Young made an absolute transfer of a certain bond to Hall, but, by an extraneous agreement, the transfer was really intended as a security for a specified liability, Young being entitled to the surplus of the avails of the bond after the liability

was discharged. The transaction was held void as to creditors. The court said that "here was a parol trust in favor of Young, the vendor, and the contract was designed to operate in the nature of a mortgage, as between the parties, but as to all the world beside, the sale should be absolute as evinced by their writings." The opinion proceeds to point out how such an arrangement was calculated to mislead and hinder creditors, and the reasoning, we think, applies to the present case. This case was affirmed in *Hartshorn v. Williams*, 31 Ala. 149. Also in *Sims v. Gaines*, 64 Ala. 392; and the court there said, that such is the law though there may be no intent to hinder, delay or defraud creditors; but because such is the inevitable consequence of such a transaction, the law condemns it; and speaking of the secret reservation of a benefit to the debtor the court said: "It cannot be supposed that, under any circumstances, the law will permit a failing debtor to sell or convey his lands, unconditionally, absolutely, so far as apparent on the face of the instruments to which creditors can have access, and yet reserve to himself the right to the use and occupation thereof for a period of time which may be a source of profit to him.—*Lukins v. Aird*, 6 Wall. 78. All such secret arrangements by which a debtor obtains valuable rights, to the prejudice of his creditors, are fraudulent. * * * * * And the law cannot enter into nice calculations of the value of the benefit the debtor has reserved." See also *Proskauer v. People's Saving Bank*, 77 Ala. 257. In *Stephens v. Regenstein & Co.*, 89 Ala. 561, the appointment of the seller of a stock of goods as agent to sell the same, at a salary of $40 per month, was held such a reservation of a benefit as rendered the sale void as to creditors. See also *Page v. Francis*, 97 Ala. 379. "A conveyance absolute in form, but intended only as security for a loan, as shown by a bond with condition to convey on payment of the debt, the papers not being recorded and no change of possession being shown, is constructively fraudulent as against existing creditors."—*Tryon v. Flournoy*, 80 Ala. 321; *McGhee v. Importers & Traders Nat. Bank*, 93 Ala. 192.

The evidence shows, without conflict, that Kelso owed about $3,000, and that Roden & Co. knew he was indebted but did not know how much, or to whom. Kelso's business, as we have seen, was that of a merchant,

and the mortgage was upon his stock in trade. He agreed to assume a new relation involving the suspension of his occupation and the acceptance of an agency to sell out his goods for the benefit of Roden & Co. at a fixed salary, indicating that by reason of his indebtedness he was so involved that he could not carry on the business. To this must be added the undisputed evidence that ''Kelso could not see his way out unless he could get time to pay.'' He executed a second and a third mortgage on this stock of goods. The undisputed evidence shows the maximum value of his property, including the stock of goods, the highest estimated value of which was about $1,600, to have been about $2,600 besides the storehouse at Pratt Mines, in which he did business, and his homestead, occupied by himself and family, both together worth about $2,200, and encumbered by a mortgage for $700. It does not appear what the separate value of the store was. When his homestead and one thousand dollars worth of personal property which are not subject to the payment of debts, are withdrawn from his assets, and his conduct in reference to his business and financial affairs and the sacrifice and expense incident to enforced judicial sales are considered, it appears from evidence, about which there is no dispute, that he was in very embarrassed circumstances and unable to go on with his business, if not badly insolvent. Roden & Co. found him so, for the proof shows that on the day the mortgage was executed Kelso owed them about $1,000, and paid them $200 on the debt, and that they were not satisfied with this payment and demanded a mortgage on his stock of goods for the balance, which was given; and which, with the agreement an half hour afterwards, amounted to a disruption of the business. It cannot be supposed that Roden & Co. contemplated when they first took the mortgage that Kelso would go on with the business, on his own account, as he had done before, for that would be to contemplate a fraud. Hence, we say that the transactions amounted to a disruption of the business. It would be idle to contend that Roden & Co. were not put on inquiry as to Kelso's true condition. We hold, therefore, that all legitimate inferences which a jury could draw from the evidence established Kelso's failing condition, and that Roden & Co. knew, or ought to have known, that such

was his condition; that his transactions with them created a trust—a reservation of a benefit to the debtor—which stamps them as, at least, constructively fraudulent, and they cannot stand. The general charge requested by the plaintiff ought to have been given, and its refusal was error.

Reversed and remanded.