# Roden & Co. *v.* Norton & Co.

*Bill in Equity to have a Mortgage by Insolvent Debtor declared Fraudulent.*

1. *Mortgage of stock of goods by debtor; void if benefit is reserved to grantor.*—Where a debtor executes a mortgage upon a stock of goods, and by agreement or understanding with the mortgagee retains possession thereof with the right to carry on the business and sell the property in regular course of trade for .his own benefit, such mortgage is, under the provisions of the statute (Code, § 2520), fraudulent and void against the mortgagor's creditors.

2. *Same; same.*—Where in a mortgage executed by a debtor upon his stock of goods, to secure an indebtedness due from him to one of his creditors, there is a stipulation that upon default in the payment of the indebtedness, as evidenced by the note, the mortgagee is authorized to take possession of the stock of goods, such stipulation is an implied reservation of the possession of the goods by the mortgagor until default, and the power to sell in the meantime is a necessary inference; and the reservation of these benefits to the mortgagor makes the mortgage fraudulent and void as against his creditors.

3. *Fraudulent conveyances; secret agreement between mortgagor and mortgagee, and reservation of benefit to mortgagor.*—A merchant, in failing condition, executed to one of his creditors, who knew of his financial embarassment, a mortgage on his entire stock of merchandise, in which it was implied that the mortgagor was to remain in possession of the property until the law day, and which provided that if the debt secured was not paid at the specified time the mortgagee might take possession and sell the property, returning any surplus over the expenses and amount of the debt to the mortgagor, which mortgage was recorded. In about a half hour after the execution of such mortgage the parties entered into another written agreement in which the mortgagor renounced and released to the mortgagee all claim and benefit he had in the stock of goods conveyed in the mortgage, and in which it was stipulated that the mortgagor was to take charge of and sell for the mortgagee the said stock of merchandise, acting

9

[Roden & Co. v. Norton & Co.]

therein as the latters' agent, at a stipulated monthly salary, and paying over to him all money arising from the sale of said goods, which agreement was to be in effect until the mortgage debt was paid, but it was never recorded. *Held*: that such agreement is a modification of the contract by the parties as set forth in the mortgage, and by reason of the transaction as evidenced by the mortgage and the agreement, there was a secret benefit reserved to the debtor, which rendered the mortgage fraudulent and void as to the other creditors of the debtor, and made the mortgagee a trustee *in invitum* for the value of the stock of goods at the time of the execution of the mortgage.

APPEAL from the Chancery Court of Jefferson.

Heard before the Hon. JOHN C. CARMICHAEL.

The bill in this case was filed by appellees as simple contract creditors of W. J. Kelso, for themselves and all other creditors of Kelso, who made themselves parties to the bill, attacking as fraudulent and void a mortgage by Kelso to Roden & Co., on a stock of merchandise, and a subsequent agreement between them, whereby the stock was disposed of by Kelso for a reward from and as the agent of Roden & Co., and for the latter's benefit, and seeking to hold the latter accountable as trustees in *invitum* for the sale of the stock converted by Roden & Co.

The material averments of the bill are that on January 25th, 1893, Kelso was indebted to appellees on account of goods and merchandise bought, in the sum of $182.10; that Kelso being then insolvent, mortgaged his stock of goods and fixtures to Roden & Co., who knew of his insolvency; that said mortgage was executed to secure the payment of a promissory note for $762.67, due on February 18, 1893; that said stock of goods was worth materially more than the amount of the note to Roden & Co.; that said indebtedness was wholly or in part simulated; that the said mortgage provided that if Kelso failed to pay said note, Roden & Co. were authorized to take possession of the stock and foreclose the mortgage; that there was no other provision in said mortgage concerning the possession or disposition of said stock; that subsequent to the execution of said mortgage, and on the same day Kelso

and Roden & Co. entered into a written agreement whereby Kelso undertook for a compensation of $50 per month to sell said stock of goods, and pay the proceeds to Roden & Co. to be credited on the mortgage debt; the agreement to remain in effect until the debt to Roden & Co. was paid. Said mortgage was recorded but the subsequent agreement was not and was kept secret. After said mortgage and agreement were entered into, Kelso continued to carry on his mercantile business under said mortgage and agreement until, to-wit, May 12th, 1893, he had paid Roden & Co. $762.67. Roden & Co. at the time of the execution of said mortgage and agreement undertook to continue to sell on credit such goods to Kelso as would conserve his business and they did so sell goods to him until his entire indebtedness was discharged.

The bill further alleges that Kelso executed said mortgage and agreement with the intent to defraud his creditors and that such intent was participated in by Roden & Co. Other mortgages second to the mortgage of Roden & Co. were also executed by Kelso to other creditors on the same stock and what remained of said stock became subject to said second mortgages after Roden & Co. was paid. It was also averred in the bill that the indebtedness of Kelso to the complainants was evidenced by a note in which Kelso waived all his rights to exemption of personal property and agreed to pay reasonable attorney's fee for the collection of said note.

The prayer of the bill was as follows: "That said mortgage executed by said W. J. Kelso to said B. F. Roden & Co. may be decreed to be a fraud on the rights of the creditors of said W. J. Kelso, and as against them, invalid, and that the defendant, B. F. Roden, J. N. Didlake and J. D. Harris, both as individuals, and as the firm of B. F. Roden & Co., be held as trustees *in invitum* for such creditors for the amount of the value of said stock of goods on the 25th day of January, 1893, and a decree may be rendered against them, individually and as such firm, for said amount, with interest from said day; that a reference may be ordered

to the register of your honor's court, to ascertain the amounts due to be paid out of the proceeds of such decree to the several persons who shall have shown themselves entitled to share in the same, and also the amount of a reasonable fee to be paid to complainant's solicitor for prosecuting this bill, and that such fee may be decreed to be paid out of the proceeds of such decree."

The defendants, Roden & Co., answered the bill and denied therein all of the charges of fraud or that they were aware of any intention on the part of Kelso to defraud his creditors, or that there was any benefit reserved to Kelso in the transactions. The facts of the case as disclosed by the evidence are sufficiently stated in the opinion.

On the final submission of the cause on the pleadings and proof, the chancellor granted the relief prayed for and ordered that a reference be held to ascertain the amount of the complainant's debt and of the debts of the other creditors of Kelso that were in existence on January 25, 1893, who intervened in the cause before the execution by reference and to ascertain what was a reasonable allowance to complainant's solicitors for the prosecution of this suit.

Upon the report of the register upon the reference, a decree was rendered confirming the same. The present appeal is prosecuted by the defendants who assign as error the rendering of the final decree granting the relief prayed for.

POWELL & BLACKBURN and JAMES E. WEBB, for appellants.—A mortgage of a stock of goods when, as in the case before the court, it is not made with any actual fraudulent intent, is not rendered fraudulent and void by the subsequent possession thereof by the mortgagor when such subsequent possession by the mortgagor and his employment as a clerk to sell them was not in his own right, but as the agent of the mortgagee under a contract made between the mortgagor and mortgagee subsequent to the execution of the mortgage.—*Thornton v. Cook*, 97 Ala. 630; *Ullman v. My-*

*rick,* 93 Ala. 532; *Simons v. Shelton,* 112 Ala. 294; *Howell v. Carden,* 99 Ala. 109; *Murray v. McNeal,* 86 Ala. 236.

The question of fraud *vel non* in the mortgage upon the stock of merchandise is not a question of law, but a question of good faith.—*Etheridge v. Sperry,* 13 U. S. 266; *People's Savings Bank v. Bates,* 102 U. S. 556; Cobbey on Chattel Mortgages, §§ 237, 238, 307 and 370; *Murray Dibrell & Company v. McNealy,* 86 Ala. 237. Such a mortgage does not necessaarily hinder or delay other creditors of the mortgagor.—*Thornton v. Cook,* 97 Ala. 630; *Ullman v. Myrick,* 93 Ala. 538; *Simmons v. Shelton,* 112 Ala. 294; *Cook v. Thornton,* 109 Ala. 523; *Harwell v. Corden,* 99 Ala. 109.

LEE C. BRADLEY, *contra.*—The fixing of a law day in the future in a mortgage impliedly leaves the mortgagor in possession until the law day.—*McMillan v. Otis,* 74 Ala. 560; *Heflin v. Slay,* 78 Ala. 180; *Owens v. Hobbie, & Teague,* 82 Ala. 466. The right of possession impliedly gives the right of sale for the mortgagor's benefit, when the mortgage is on a stock of merchantable goods. *McDermott v. Eborn,* 90 Ala. 258; *Owen v. Hobbie & Teague, supra; Birmingham Dry Goods Co. v. Roden,* 110 Ala. 511. The retention by a mortgagor of a stock of merchantable goods with the right to sell for his own benefit is fraudulent, *per se.*—*Bank v. Brewer,* 71 Ala. 574; *Benedict v. Renfro,* 75 Ala. 121; *Renfro v. Goetter,* 78 Ala. 317; *O'Neil v. Brewing Co.,* 101 Ala. 388.

It is not denied that a debtor in failing circumstances can make a conveyance of property in absolute satisfaction of debts, when the value of the property is not greater than the debts, thereby satisfied, *provided no benefit inure to the grantor,* and the law cannot enter into nice calculations of the value of the benefit the debtor has reserved. The law is particularly severe in its condemnation of secret agreements, by which a benefit to the debtor is reserved.—*Bryant v. Young,* 21 Ala. 264; *Simms v. Caine,* 64 Ala. 392; *Proskauer v. People's Savings Bank,* 77 Ala. 257; *Steven v. Regenstein,* 89 Ala. 561; *Birmingham Dry Goods Co. v. Roden, supra.*

The operation of the statute, section 2150, Code of 1896, does not depend upon the insolvency of the grantor in trust. The creditor has the right to pursue and subject property conveyed by his debtor to the latter's own use and benefit, notwithstanding the debtor may have other property which might be subjected to the debt.—*O'Neil v. Birmingham Brewing Co.,* 101 Ala., 383; *Myer v. Lehman,* 67 Ala. 405. Consequently notice to the mortgagee of insolvency in unnecessary. *Hays v. Westcott,* 91 Ala. 143.

HARALSON, J.—On the 25th January, 1893, as the evidence shows without dispute, Kelso was indebted to Roden & Co. in the sum of $762.67; that prior to that date, he was indebted to them in the sum of $1,163.96, but paid them a sum on or about that date which reduced his debt to them, to the amount above stated, and on the 25th January, he gave defendants his note for that sum, payable on the 18th February following. Kelso testified for defendants, that he had a visit from Didlake of defendant firm, on the 25th January, who told him that that would not do, referring to the note he had given, and that he, Kelso, had to make a payment on that debt, for which the note was given; that he went to Birmingham with Didlake that day, and had an interview with him and Harris, another member of said firm, and gave them the mortgage in question on his stock of goods, etc. The mortgage contained the condition,—to quote its language,—"that if I pay said note to the said B. F. Roden & Co. or their assigns, with interest, this note to be void; but if I fail to pay said note in whole or in part at maturity, then B. F. Roden & Co., their agents or assigns, are authorized to take possession of said property, and after giving ten days notice, by posting notices in three public places in said county, to sell the same at auction to the highest bidder for cash," and after paying expenses of sale and an attorney's fee for foreclosing it, to pay the balance due on said note, and the surplus, if any, to the mortgagor."

The law day of the mortgage having been fixed in the mortgage at a future day, when the mortgagee might take possession of the mortgaged property for the purpose of foreclosure, the mortgagor was impliedly left in possession of the property, which was a stock of goods in store, with implied power to sell them. The mortgagee's right to take possession was, by clear implication, deferred until the maturity of the note. This was a reservation of benefit to the mortgagor, which stamped the mortgage as fraudulent in law against creditors, notwithstanding an agreement entered into privately, that the proceeds of the sale should be paid over to the mortgagee.—*Owens v. Hobbie & Teague*, 82 Ala. 466; *O'Neil v. Brewing Co.*, 101 Ala. 383; *McMillan v. Otis*, 74 Ala. 560; *Heflin v. Slay*, 78 Ala. 180; *Benedict H. & Co. v. Renfro*, 78 Ala. 121.

As is shown, about a half hour after the mortgage was executed, an agreement in writing was entered into by and between Roden & Co. and Kelso, stipulating as follows: "The undersigned, W. J. Kelso, agrees to take charge of and sell for said B. F. Roden & Co. the stock of goods, wares and merchandise this day mortgaged by him to said B. F. Roden & Co., the same being situated in his store house at Pratt Mines, Alabama, he acting as the agent of the said B. F. Roden & Co., the mortgagees in said mortgage. It is further agreed, that all money arising from the sale of said goods shall immediately be the property of the said B. F. Roden & Co., the mortgagees in the mortgage referred to, and shall be paid over to them by the said W. J. Kelso, on the last day of each month, beginning on January 31st, 1893, or oftener, if required, and shall go as credits on the mortgage debt. It is expressly agreed and understood, that the said W. J. Kelso, the mortgagor in said mortgage referred to, renounces and releases all benefit he may have in said stock of goods, and that all sales shall be for and on account of said mortgagees, B. F. Roden & Co. It is further agreed, that if any of the goods and merchandise are sold on credit, the accounts also are to pass to the mortgagees, B. F. Roden & Co. as their property, and be credited

as so many payments on the mortgage debt. This agreement to hold and be in effect till the mortgage debt with interest thereon is paid in full. It is agreed further, that the said W. J. Kelso shall receive for his services fifty ($50) dollars per month to be paid by the said B. F. Roden & Co."

The mortgage was duly acknowledged and filed for record, on the day of its date, in the probate office, and recorded the following day. The said subsequent agreement was never recorded.

This transaction is fairly open to two conclusions, either of which on the attack of a creditor is fatal to it. The first is, that it was a part of the original agreement, that both papers should be separately executed, the mortgage to be placed on record and the subsequent agreement withheld therefrom, the intention of the second being, to secure a benefit to the mortgagor, in the way of enabling him to continue business and work out his debt to defendants, and, meantime, secure wages at $50 a month. As it turned out he did both, and as between him and defendants, it promised to be very beneficial to him. On the 13th of May, 1893, by the means employed, defendants' debt was paid in full, their mortgage cancelled and given up to Kelso, and he went on in business as before. Kelso testified, that the stock of goods mortgaged, was worth about $800 to $850, and that he thought the stock in the store,— to use his own language,—"would be about as good when I got from under the debt of Roden & Co. as when I took hold of it." Again, he stated, somewhat in contradiction of the above statement: "I don't know how much of the old stock of goods I sold. I had as much as half the stock on hand when I got out from Roden & Co. of the stock in the mortgage. I believe more than half, but would not make an estimate." As further tending to show the intended benefit of this arrangement to the mortgagor, it further appears that after the mortgage, Roden & Co. consigned goods to Kelso for sale to near the amount of $2,400, and these goods were placed in store and sold, as is fairly inferable; and between January 25th and May 22d, 1893,

Kelso paid Roden & Co. $3,184.79. J. M. Didlake, one of the firm of Roden & Co., testified, that after the mortgage, they did not sell goods to Kelso, but consigned them to him for sale without commission, as his salary covered that,—meaning commissions; that the goods on consigned account, and everything else was paid up when the papers were turned over to him, and that they consigned the goods to him at a certain price. The answer of defendants states, that they consigned to him these goods as their agent, and his compensation was to be what he could sell them for above the price they authorized him to sell at. He shows, however, that what he called consigned goods, may well be considered and treated as goods really sold to Kelso, for he says: "I don't know the value of the goods consigned to him. We sold him $300 or $400 a month—consigned that much,—and that after April 25th, he desired Roden & Co. to continue selling goods to him, but they would not." He here shows, that what he called a consignment of goods, was in substance and effect a sale of them to Kelso. This discussion of the evidence tends strongly to show, that the whole scheme in its execution was beneficial to Kelso and was so intended, and contemplated his continuance in business after as before the mortgage. The law will not enter into nice calculations of the value of the benefit such debtor has reserved.—*Sims v. Gaines*, 64 Ala. 392.

The other view open to be taken of the case, is the one indulged by this court, when this same transaction was before the court in another connection, in which case, the court declaring the mortgage fraudulent as to conditions, said, in speaking of this second agreement: "It is clear this agreement was a modification of the contract of the parties, as set forth in the mortgage, binding upon both parties. It was a substitution in the mortgage, of the new provisions for the provisions therein, which were inconsistent with them. As such, the new agreement became essentially a part of the mortgage, of like practical and legal effects as if it had been set out therein, and the first inconsistent provisions omitted. By it, an entirely new and different defeasance

and new and different methods of disposition of the goods were created, which, being withheld from the record whilst the original was put upon the record as representing the contract of the parties, became and was a secret agreement. To all the world, therefore, the contract was represented to be, that Kelso's right and possession should terminate on February 18th, 1893, and Roden & Co. should be then empowered to take and sell the goods at auction, etc., while the real agreement, known only to the parties themselves, created the relation of pricipal and agent between themselves, removed all limitation upon the time of Kelso's right to possession, empowered him to sell the goods at private sale, and entitled him to recover for his services at $50 per month."—*Birmingham Dry Goods Co. v. Roden & Co.*, 110 Ala. 511; *Stephens v. Regenstein*, 89 Ala. 561; *Tryon v. Flournoy*, 80 Ala. 321. On either of these two theories, therefore, the mortgage was fraudulent as to complainants.

Section 2150 of the Code avoids, as against creditors, all conveyances, transfers and assignments of goods and chattels made in trust for the use of the person making the same, notwithstanding there may have been no actual intent to hinder, delay or defraud creditors; but because such is the inevitable consequence of such a transaction, the law condemns it.—*Sims v. Gaines*, 64 Ala. 392. Nor does its fraudulent operation depend upon the insolvency of the grantor; and it is unnecessary in a bill filed for relief, for it to aver his insolvency. The creditor has a right to pursue and subject property conveyed by his debtor or its proceeds, to the latter's use and benefit, notwithstanding the debtor may have property subject to the payment of his debt. *O'Neil v. Brewing Co.*, 101 Ala. 383; *Lehman v. Meyer*, 67 Ala. 397. The evidence, however, tends to show quite conclusively, if that were important, that Kelso was insolvent at the time of making the mortgage, and, as was said in the case of *Birmingham Dry Goods Co. v Roden, supra*, "It would be idle to contend that Roden & Co. were not put on inquiry as to Kelso's true condition."

The complainants in their bill claim a reasonable solicitor's fee for the prosecution of this case for the collection of their debt. While Kelso's note to complainants was lost, the proof shows, clearly enough, that Kelso in the note waived his right of exemptions as to personal property, and agreed, in the same, to pay a reasonable attorney's fee for its collection. The register ascertained and reported that $100 was a reasonable attorney's fee, and to this finding the defendants made no exception. There was no error in its allowance by the court.

While the proof shows satisfactorily, that Kelso was insolvent, it is also sufficient to show that he owned personal property in value over $1,000; and it fails to show that at any time has he ever made selection of any particular property he would retain as exempt, as it was his duty to do, if he claimed and desired it to remain exempt to him.—*Nance v. Nance*, 84 Ala. 375; *Jackson v. Wilson*, 117 Ala. 432. Furthermore, the bill alleges that Kelso waived his exemptions to personal property in the note he executed to complainants, and the defendants in their answer denied this averment of the bill; but the proof satisfactorily establishes its truth.

Finding no error in the decree of the chancellor, it must be affirmed.

Affirmed.